**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|  |  |  |
|---|---|---|
| **ANTHONY ROBINSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 3:10CV765 |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Anthony Robinson, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his applications for Social Security Disability ("DIB") and Supplemental Security Income payments ("SSI"). The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 9) be DENIED; that Defendant's motion for summary

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

judgment (docket no. 11) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI and DIB on December 18, 2007, claiming disability due to multiple sclerosis, with an alleged onset date of August 1, 2007. (R. at 101-11, 129.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 54-59; 62-65.) On June 1, 2009, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 23-48.) On November 20, 2009, the ALJ denied Plaintiff's application, finding that he was not disabled under the Act where, based on his age, education, work experience and residual functional capacity, there are jobs he could perform which exist in significant numbers in the national economy. (R. at 9-16.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-3.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[4] based on an assessment of the claimant's residual functional

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. c 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. c 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform his past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

---

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of his disability. (R. at 11.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of multiple sclerosis, peripheral neuropathy[6] in the lower extremities, and anemia, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 11-13.) The ALJ next determined that Plaintiff had the RFC to perform sedentary work, except that at times he needs a cane or walker for ambulation. (R. at 13-15.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform his past relevant work as a car detailer because of the level of exertion required in the position. (R. at 15.) At step five, after considering Plaintiff's age, education, work experience and RFC, and after consulting a VE, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 15-16.) Specifically, the ALJ found that Plaintiff could work as an assembly worker, cigarette inspector, or hand packer. (R. at 16.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that he was not entitled to benefits. (R. at 30-31.)

Plaintiff moves for a finding that he is entitled to benefits as a matter of law, or in the alternative, he seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of his position, Plaintiff argues that: (1) the ALJ failed to sufficiently articulate his findings at step three of the analysis; and (2) the ALJ erred by posing a hypothetical to the VE that did not include all of Plaintiff's limitations. (Pl.'s Mem. in Supp. of Mot. for

---

6 Peripheral neuropathy is defined as "a functional disturbance or pathological change in the peripheral nervous system, sometimes limited to noninflammatory lesions as opposed to those of neuritis." Dorland's Illustrated Medical Dictionary 1287-88 (31st ed. 2007).

Summ. J. ("Pl.'s Mem.") at 8-16.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 8-16.)

    **A.**    **Substantial evidence supports the ALJ's finding that Plaintiff does not have a severe impairment or combination of impairments that meets or medically equals a listed impairment.**

Plaintiff contends that the ALJ failed to sufficiently articulate her findings at step three of the analysis. (Pl.'s Mem. at 8-14.) Plaintiff asserts that his impairments medically equal, if not meet, Listings 11.09 and 11.14. (Pl.'s Mem. at 10-14.) Plaintiff argues that his limitation to sedentary work and his need to use a cane or wheelchair to ambulate supports a finding that he has significant disorganization of motor function, as required to satisfy both Listings. (Pl.'s Mem. at 10.) Though Plaintiff contends his impairments meet the Listings, in the alternative he contends that a medical expert's advice should have been sought to determine whether Plaintiff's impairments medically equaled a Listing. (Pl.'s Mem. at 12.)

The Court notes at the outset that Plaintiff has not challenged the ALJ's credibility determination or conclusions regarding the opinion evidence. Notably, the Court found Plaintiff not entirely credible and assigned "great weight" to Plaintiff's treating physician opinion. (R. at 13-15.) Plaintiff's treating physician opined that Plaintiff did not require any assistive devices to ambulate, that he experienced moderate pain, and that he could ambulate with only slight difficulty. (R. at 408-10.) Such opinions directly contradict Plaintiff's contention that his impairments cause significant and persistent disorganization of motor function.

In order to meet Listings 11.09 or 11.14, Plaintiff must satisfy § 11.04B, in that his impairments cause "significant and persistence disorganization of motor function in two

7

extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.04B. The ALJ did not find that Plaintiff's impairments rose to that level of severity, and, in the Court's opinion, Plaintiff has not presented sufficient evidence to overturn the ALJ's decision in the same regard. Moreover, Plaintiff's own treating physician did not opine that Plaintiff was so severely limited. The ALJ evaluated the medical evidence, the opinion evidence (which Plaintiff does not challenge), as well as Plaintiff's credibility (also not challenged), and it simply cannot be said that there was an "utter failure" to evaluate the evidence by the ALJ. (Pl.'s Mem. at 13.)

Further, Plaintiff's contention that he "must" meet the requirement that his impairments cause significant and persistent disorganization of motor function simply because he is limited to sedentary work is unpersuasive. It is illogical to find that a limitation to sedentary work necessarily means that one is thereby disabled. Also, Plaintiff errs in asserting that the ALJ found that Plaintiff "*require[s]* a cane or wheelchair when on his feet." (Pl.'s Mem. at 10, emphasis added.) Rather, the ALJ found that "*at times* [Plaintiff] needs a cane or walker for ambulation." (R. at 13, emphasis added.) The ALJ explicitly noted that there was no evidence that Plaintiff *required* an assistive device for ambulation, or that such was prescribed for him. (R. at 14.) It appears that Plaintiff has instead exaggerated the ALJ's statements regarding Plaintiff's ability to ambulate. Simply put, noting that Plaintiff may "at times" need a cane or walker to ambulate is not the same as requiring "a cane or wheelchair when on his feet." (R. at 14, Pl.'s Mem. at 10.)

Plaintiff also appears to argue that he satisfies Listing 11.09C because "on at least one occasion" he exhibited muscle weakness. (Pl.'s Mem. at 10-11.) However, Listing 11.09C requires "*significant, reproducible* fatigue of motor function with *substantial* muscle weakness

8

on repetitive activity…." 20 C.F. R. Pt. 404, Subpt. P, App. 1, § 11.04C (emphasis added). Plaintiff notes but a single isolated examination allegedly demonstrating such weakness. (R. at 287.) The Court is not persuaded that a single showing of generalized weakness is enough to overturn the ALJ's decision that Plaintiff's impairments were not accompanied by substantial muscle weakness demonstrated on examinations as required to meet Listing 11.09 or 11.14. (See R. at 12-13.)

Plaintiff also appears to suggest that the ALJ mistakes Plaintiff's neurological impairments for orthopaedic impairments, and erroneously relies on an orthopaedic listing in finding that Plaintiff's impairments do not satisfy a required Listing. (Pl.'s Mem. at 11-12.) Plaintiff asserts that it was "patently clear that the ALJ had little or no understanding of the applicable Listings," and that the ALJ demonstrated a "clear misunderstanding" of Plaintiff's impairments which are "strictly neurological." (Pl.'s Mem. at 11.) However, while insisting that his impairments are not orthopaedic, Plaintiff then asserts that his impairments "*unquestionably* equal in severity the requirements of the [Listings]; albeit the orthopaedic Listings." (Pl.'s Mem. at 12, emphasis in original.) Such an argument is contradictory in its own nature. Further, the Court notes that during the hearing the ALJ stated that she was looking at the Listings in terms of musculoskeletal impairments, and that she would "have to go back and see what -- exactly is meant by disorganization of mobility function. Okay. We're okay." (R. at 33.) Also, in her decision, the ALJ properly referenced the neurological Listings, and not the orthopedic Listings. It is clear, then, that the ALJ realized her misunderstanding and consulted the relevant neurological Listings. (R. at 12-13.) Plaintiff has not demonstrated that the ALJ failed to do so. Consequently, Plaintiff's argument that his impairments medically equal an orthopaedic Listing is not persuasive. Similarly, his contention that a medical expert should have been consulted to

9

determine whether his impairments medically equaled such a Listing is without merit, as the ALJ was able to reach her decision based on the entire record.

Because substantial evidence supports the ALJ's decision that Plaintiff's impairments do not meet or medically equal any Listing, the Court recommends that the ALJ's decision be affirmed in that regard.

**B.      The ALJ did not err by not including Plaintiff's alleged blindness in the hypothetical posed to the VE.**

Plaintiff contends that the ALJ posed an incomplete hypothetical to the VE in that she did not include Plaintiff's blindness in his left eye as a relevant impairment. Plaintiff asserts that the ALJ "failed to recognize that [Plaintiff] is blind in one eye," and consequently the hypothetical posed to the VE did not fully and fairly describe Plaintiff's limitations. (Pl.'s Mem. at 14-16.)

Though Plaintiff argues that such is a step five error, the argument that Plaintiff's blindness in his left eye is more appropriately presented at step two (severe impairments), or in the ALJ's RFC finding. The ALJ did not find that Plaintiff had any visual limitations. Consequently, the hypothetical he posed to the VE did not have to include any such limitations, and there is, therefore, no error in the ALJ's reliance on the VE's testimony. Rather, Plaintiff appears to be arguing that the ALJ should have found Plaintiff's visual problems to be a severe impairment, or at least that it should have been included in the RFC determination. However, substantial evidence supports the ALJ's decision not to include visual limitations in Plaintiff's severe impairments, or in the RFC determination.

The ALJ specifically addressed Plaintiff's alleged visual impairments in her decision. The ALJ noted that there was evidence that Plaintiff had decreased vision in his left eye, without correction, but that he had no "cloudiness" or abnormality of the lens and his retina was clearly visible and normal. (R. at 12.) The ALJ also noted that Plaintiff's right eye visual activity was

good, that Plaintiff failed to follow recommendations to get glasses, and that Plaintiff was able, by his own admissions, to see enough to manage a checkbook, handle money, and watch television all day. (R. at 12.) The ALJ therefore concluded that such findings and activities reflected an ability to see both near and far, and "[Plaintiff's] failure to seek correction for his visual defecit [sic] serves to convince the undersigned that [Plaintiff] himself does not consider his left eye visual defecit [sic] to be a significant factor limiting his ability to see." (R. at 12.) Accordingly, the ALJ found that Plaintiff's visual limitation was "not severe" in that it had no more than a minimal effect on his ability to function. (R. at 12.)

It is clear that the ALJ did not "fail to recognize that [Plaintiff] is blind in one eye." (Pl.'s Mem. at 14.) Rather, the ALJ specifically addressed the alleged visual limitation and found it to be not severe, in part because of Plaintiff's failure to seek correction for the visual deficit. Plaintiff has not presented evidence that he is "blind in one eye," even after correction. It was proper, then, for the ALJ to disregard the VE's testimony regarding whether a visual impairment would limit the occupational base, as the ALJ had already found that Plaintiff's visual limitations had no more than a minimal effect on his ability to function. Accordingly, because substantial evidence supports the ALJ's decision, the Court recommends that the ALJ's decision should be affirmed.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 9) be DENIED; that Defendant's motion for summary judgment (docket no. 11) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                          /s/
                                       Dennis W. Dohnal
                                       United States Magistrate Judge

Date: <u>October 11, 2011</u>
Richmond, Virginia