UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| ANTHONY ROBINSON,<br><br>                                    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, COMMISSIONER,<br>SOCIAL SECURITY ADMINISTRATION,<br><br>                                  Defendant. | Civil Action No. 3:10-CV-765 |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Anthony Robinson's Objections (Doc. No. 16) to the Magistrate Judge's Report and Recommendation ("R&R") (Doc. No. 15) affirming the Social Security Administration's denial of an application for Social Security Disability and Supplemental Security Income payments. The Commissioner of the Social Security Administration's (Michael Astrue) decision to deny benefits was based on a finding by an Administrative Law Judge ("ALJ") who determined that Robinson is not disabled according to the Social Security Act and applicable regulations. For the reasons stated below, the Court will OVERRULE Robinson's objections and ADOPT Judge Dohnal's Report and Recommendation DENYING Robinson's Motion for Summary Judgment (Doc. No. 9); GRANTING the Commissioner of Social Security's Motion for Summary Judgment (Doc. No. 11); and AFFIRMING the Commissioner's decision denying benefits to Robinson.

### I. BACKGROUND

There is a five-step analysis conducted for the Commissioner by an ALJ to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520. The ALJ considers whether an applicant (1) is performing "substantial gainful activity"; (2) is severely

1

impaired; (3) has an impairment that is at least as severe as one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) could continue performing work that he did in the past; and (5) could perform any other job in the national economy. 20 C.F.R. §§ 416.905, 416.920; see Rogers v. Barnhart, 216 F. App'x 345, 347–48 (4th Cir. 2007). If, at any step of that analysis, the ALJ is able to determine that the applicant is disabled (or not disabled), the inquiry must stop. 20 C.F.R. § 404.1520(a)(4). The applicant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner if the analysis reaches step five. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

In this case, the ALJ found that Robinson is not disabled at step five of the analysis. With respect to step one, the ALJ found that Robinson had not performed substantial gainful activity since the alleged onset of his disability. Addressing steps two and three, the ALJ found Robinson had the severe impairments of multiple sclerosis ("MS") and peripheral neuropathy in the lower extremities, and in addition anemia, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ determined that (1) Robinson had the residual functional capacity ("RFC") to perform sedentary work, except that at times he needs a walker or cane for ambulation; and (2) that Robinson could not perform his past relevant work as a car detailer because of the exertion necessary for the position. At the fifth and final step, however, the ALJ found that there are other occupations which exist in significant numbers in the national economy that Robinson could perform, namely the positions of assembly worker, cigarette inspector, or hand packer. In making this determination, the ALJ consulted a vocational expert ("VE"), and considered Robinson's age, education, work experience, and RFC. The

ALJ's determination at step five resulted in a finding that Robinson is not disabled and therefore not entitled to benefits.

Robinson appealed the ALJ's determination, arguing that: (1) the ALJ failed to sufficiently articulate his findings at step three of the analysis; and (2) the ALJ committed error by posing a hypothetical to the VE that did not include all of his limitations. Judge Dohnal found that (1) substantial evidence supports the ALJ's finding that Robinson does not have a severe impairment or combination of impairments that meets or medically equals a listed impairment (R&R 7-10); and (2) the ALJ did not err by not including Robinson's alleged blindness in the hypothetical posed to the VE. (R&R 10-11.) The R&R agrees with the Commissioner's determination and recommends that the Court DENY Robinson's Motion for Summary Judgment, GRANT the Commissioner's Motion for Summary Judgment, and AFFIRM the decision denying benefits to Robinson.

Robinson now objects to the R&R, alleging that (1) the treating physician's report contains uncontradicted, objective medical findings that show Robinson meets or medically equals an MS or peripheral neuropathy listing, and (2) the ALJ should have employed a medical expert to assess whether Robinson satisfied the orthopaedic listing.

## II.   STANDARD OF REVIEW

The Court may review a denial of benefits by the Commissioner, 42 U.S.C. § 405(g), but it must accept the Commissioner's findings of fact if they are supported by substantial evidence and were reached by applying the correct legal standard. *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006) (stating that a court must apply that standard to findings of fact by an ALJ). The "substantial evidence" standard is more demanding than the "scintilla" standard, but less demanding than the "preponderance" standard. *Mastro v. Apfel*, 270 F.3d

3

171, 177 (4th Cir. 2001). Thus, a finding is supported by "substantial evidence" if it is based on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). And, if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision. *Id.* In determining whether a decision satisfies that standard, the Court may not weigh conflicting evidence, evaluate the credibility of evidence, or substitute its judgment for the Commissioner's findings. *Mastro*, 270 F.3d at 176.

### III. ANALYSIS

#### A. *Judge Dohnal properly concluded that substantial evidence supports the ALJ's finding that Robinson does not have a severe impairment or combination of impairments that meets or medically equals the MS or peripheral neuropathy listings.*

At the second and third steps, the ALJ found Robinson had the severe impairments of MS and peripheral neuropathy in the lower extremities, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. The relevant listing in the appendix for MS is listing 11.09. A claimant can meet or equal listing 11.09 in three ways: (1) by showing "[d]isorganization of motor function as described in 11.04B"; (2) by showing "[v]isual or mental impairment as described under the criteria in 2.02, 2.03, 2.04, or 12.02"; or (3) by demonstrating "[s]ignificant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity." 20 C.F.R. pt. 404, subpt. P., app. 1, § 11.09. Listing 11.04B, in turn, requires a claimant to show "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." *Id.* § 11.04B.

4

The relevant listing in the appendix for peripheral neuropathy, listing 11.14, requires the same showing as the first method under listing 11.09, namely that the claimant prove disorganization of motor function as set forth in listing 11.04B. Thus, in order to meet or medically equal a listed impairment, Robinson must make a satisfactory showing under one of the three methods set forth in listing 11.09.

The R&R reasoned that the ALJ properly found Robinson's impairments did not rise to the level of impairment required under the first method: "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." *Id.* § 11.04B. In so finding, the R&R noted Robinson did not challenge the ALJ's placing "great weight" on the opinion of Robinson's treating physician, who opined that Robinson did not require any assistive devices to ambulate, that he experienced moderate pain, and that he could ambulate with only slight difficulty. (R&R 7 (citing R. 408–10).)

Robinson readily concedes that he does not challenge the weight assigned to the treating physician's opinion.[1] Indeed, Robinson contends that he does not dispute the ALJ's credibility determination on this point because "contrary to the R&R's evaluation, the [treating] neurologist's report included uncontradicted, well-defined objective findings of

---

[1] Robinson's concession is understandable. Under the regulatory scheme, evidence from treating physicians is generally afforded controlling weight because treating physicians are in a better position to provide a more detailed and personalized analysis:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 416.927(d)(2).

significant disorganization of motor function affecting both gait and station on physical examination." (Pl.'s Objections 2.) The gravamen of Robinson's argument is that that neither listing 11.09 nor 11.14 specifies the *degree* of impairment or limitation that must be present in the claimant's gait or station—on Robinson's view, the listings only require that "motor disorganization must 'affect' gait and station." (Pl.'s Objections 3.) In a conclusory fashion, Robinson maintains that it is "beyond any real controversy" that his gait and station is affected and that his MS and peripheral neuropathy "are unquestionably 'significant' and 'persistent' under any definition of those words." (Pl.'s Objections 3.)

Robinson's argument is meritless. Listing 11.09A unequivocally requires "*significant and persistent* disorganization of motor function in two extremities, resulting in *sustained disturbance* of gross and dexterous movements, or gait and station." 20 C.F.R. pt. 404, subpt. P., app. 1, § 11.09(A) (emphasis added). Judge Dohnal properly reasoned that the treating physician's opinion—which found that Robinson could walk with only slight difficulty and did not require an assistive device to do so, and that Robinson experienced only moderate pain—amply supports the conclusion that Robinson's impairments do not rise to the level of severity required by listing 11.09A. (R&R 7–8.) Robinson's objections concerning listings 11.09A and 11.14—both requiring proof of disorganization of motor function as set forth in listing 11.04B—are unpersuasive. For this reason, Judge Dohnal's recommendation will be ADOPTED and Robinson's objection that the treating physician's report contained objective evidence sufficient to meet the requirements of the MS and peripheral neuropathy listings will be OVERRULED.

> ### B. *Judge Dohnal properly concluded that substantial evidence supports the ALJ's finding that Robinson does not have a severe impairment or combination of impairments that meets or medically equals the orthopaedic listings.*

6

Robinson argues that because the ALJ determined he sometimes requires a cane or walker for ambulation, the ALJ should have consulted a medical expert to assess whether Robinson's conditions satisfied the requirements of an orthopaedic listing, given that the need for a walker is an "integral" requirement of some orthopaedic listings.

As an initial matter, the Court notes that it appears Robinson never raised this argument until *after* the hearing before the ALJ. The transcript makes clear that at the hearing, Robinson sought to establish that he met or equaled the MS or peripheral neuropathy listings, and not the orthopaedic listings.[2] Further, in his briefing at the summary judgment stage of this appeal, Robinson initially stated that the ALJ demonstrated a "clear misunderstanding" of his impairments, which are "strictly neurological," but went on to insist that his impairments "unquestionably equal[ed] in severity the requirements of the Listing[s] . . . ; albeit the orthopaedic Listings." (R&R 9 (quoting Pl.'s Mem. Supp. Mot. Summ. J. 11–12).)

Despite Robinson's failure to raise the argument with the ALJ and his contradictory and confusing statements, Robinson did assert in his Appeals Council review request that the matter should be remanded to the ALJ for consideration of whether his impairments equaled in severity the requirements of the orthopaedic listings. (R. 97.) Giving Robinson

---

[2] When Robinson's counsel stated he believed Robinson met the requirements of "either 11.09 or 11.14," the ALJ's response indicated she had been looking at the listings in terms of musculoskeletal impairments. (R. 32.) Robinson's counsel then referred the ALJ to the relevant neurological listings, noting that "instead of ambulating effectively[,] we're just talking about significant and persistent disorganization of motor function." (R. 32.) In response, the ALJ acknowledged she had been focusing on the wrong listings, and that she would have to go back and determine whether Robinson met the relevant neurological listings. (R. 33 ("ALJ: . . . . I [will] have to look at that again because I was looking at it in terms of the musculoskeletal listings and I have to go back and see what - - exactly what is meant by disorganization of mobility function. Okay. We're okay.")

7

the benefit of the doubt, the issue was raised before the Secretary, and therefore reviewable on this appeal.

In his Objections, Robinson states various orthopaedic listings have as a requirement "the inability to ambulate effectively," and that the regulations provide that inability to ambulate without the use of a walker, and inability to walk a block at a reasonable pace on rough or uneven surfaces, exemplify that requirement. (Pl.'s Objections 4 & n.2.) Robinson contends that the ALJ's fact determination that Robinson "at times . . . needs a cane or walker for ambulation" and the treating physician's conclusion that Robinson had great difficulty walking on rough or uneven surfaces, necessitated testimony from a medical expert to help determine whether Robinson met any of the orthopaedic listings.

> "Inability to ambulate effectively" is defined as
>
> an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. pt. 404, subpt. P., app. 1, § 1.00(B)(2)(b).

The Commissioner maintains, and the Court agrees, that Robinson fails to show his condition resulted in an "inability to ambulate effectively" as defined in § 1.00(B)(2)(b), as Robinson has not established that his ambulation limitations are so severe that he *requires* the use of hand-held assistive devices to ambulate. It is true that all of the orthopaedic listings cited by Robinson—except for two, one of which is irrelevant and the other

8

nonexistent[3]—have as a requirement "the inability to ambulate effectively." 20 C.F.R. pt. 404, subpt. P., app. 1, § 1.02(A), 1.03, 1.04(C), 1.05(B). Each listing, however, expressly requires that the claimant have "the inability to ambulate effectively, *as defined in 1.00B2b.*" *Id.* (emphasis added). As Robinson acknowledges, inability to ambulate without the use of a walker and inability to walk a block at a reasonable pace on rough or uneven surfaces are merely examples of ineffective ambulation. While it is true that the treating physician opined Robinson would have "great difficulty" walking a block at a reasonable pace on rough or uneven surfaces (R. 409), the treating physician also opined that Robinson did not require the use of any assistive device—be it a walker, bilateral crutches, or bilateral canes—to ambulate effectively. He also opined in June 2009 that Robinson's lower extremity impairment was only moderate, and that the condition had not changed since Robinson's initial diagnosis in November 2007. In essence, the evidence the ALJ relied upon in determining Robinson could not meet or medically equal the requirements of the MS or peripheral neuropathy listings is just as applicable here. It simply cannot be said that Robinson cannot ambulate "without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. pt. 404, subpt. P., app. 1, § 1.00(B)(2)(b).

There is substantial evidence in the record to support a finding that Robinson does not have a severe impairment or combination of impairments that meets or medically equals the orthopaedic listings. Accordingly, Judge Dohnal's recommendation will be ADOPTED and Robinson's objection that the ALJ should have consulted a medical expert to

---

[3] Listing 1.05A is irrelevant, as it deals with individuals who have had both of their hands amputated, and listing 1.06D simply does not exist. 20 C.F.R. pt. 404, subpt. P., app. 1, § 1.05(A); *see id.* § 1.06.

assess whether Robinson's conditions satisfied the requirements of an orthopaedic listing will be OVERRULED.

## IV. CONCLUSION

For the reasons stated above, the Court will OVERRULE Robinson's objections and ADOPT Judge Dohnal's Report and Recommendation DENYING Robinson's Motion for Summary Judgment; GRANTING the Commissioner of Social Security's Motion for Summary Judgment; and AFFIRMING the Commissioner's decision denying benefits to Robinson.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

It is SO ORDERED.

/s/
James R. Spencer
United States District Judge

ENTERED this 30th day of March 2012